**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA**

JOEL DOUGLAS SHALEEN,      )
                                 )
               **Petitioner,**    )
                                 )
**vs.**                           )    **Case No. 10-CV-758-GKF-TLW**
                                 )
TRACY McCOLLUM, Warden,[1]   )
                                 )
              **Respondent.**   )

## OPINION AND ORDER

Before the Court is the petition for writ of habeas corpus (Dkt. # 2) filed by Petitioner Joel

Douglas Shaleen (Petitioner or Joel), a state inmate represented by counsel.  Respondent filed a

response (Dkt. # 6) and provided the state court records (Dkt. ## 6-11) necessary for adjudication

of Petitioner's claims.  Petitioner filed a reply (Dkt. # 14).  For the reasons discussed below, the

petition for writ of habeas corpus shall be denied.

## *BACKGROUND*

On September 12, 2006, between 6:30 and 7:00 a.m., Petitioner shot and killed his wife,

Tonya Smith-Shaleen (Tonya or Mrs. Shaleen), in their bedroom of the home owned by Petitioner,

located in Broken Arrow, Oklahoma.  Tonya was an alcoholic and was intoxicated on the morning

of the shooting.  Present in Petitioner's home at the time of the shooting were Joel, Tonya, Tonya's

son Waylon Smith (Waylon), Petitioner's son Eric Shaleen, and Terri Ann Vaclavik, the girlfriend

of Petitioner's son Zack Shaleen.  Tonya owned another home, located on the block adjacent to

---

[1]Since Petitioner is incarcerated at the Oklahoma State Reformatory, see www.ok.gov/doc,
the state officer having current custody is Tracy McCollum, Warden.  See Rule 2, Rules Governing
Section 2254 Cases.  For that reason, the Court Clerk shall be directed to substitute Tracy
McCollum, Warden, in place of Justin Jones, Director, as party respondent in this matter.

Petitioner's home.  Tonya's other children, including Daniel, Tony, and Jenny Smith, along with Jenny's boyfriend, Jacob Dismang, were at the nearby home owned by Tonya at the time of the shooting. Petitioner admitted that he and his wife argued "from time to time," often about Waylon, one of Tonya's adult sons from her first marriage.  Both Joel and Tonya were gun enthusiasts and they had a large gun collection, including four handguns and an AK-47 assault rifle.  Just prior to the shooting, the couple was yelling and arguing over Waylon who had been bringing stolen goods into Petitioner's home, where he was living at the time.

Based on the events surrounding the shooting, Petitioner was charged with First Degree Murder in Tulsa County District Court, Case No. CF-2006-4482.  He was tried by a jury.  During the trial, the jury heard the recording of the 911 call placed by Petitioner after shooting his wife.  He told the 911 operator that his wife was reaching for her gun, so he shot her.  During the conversation, he stated that Tonya "never did get her gun." See Dkt. # 6, Ex. 3 at 2 n.2.  Waylon, Eric, and Terri Ann all testified that, after Tonya was shot, either they did not see a gun near Tonya's body or they did not remember seeing a gun near her body.  Waylon testified that he saw Petitioner with an AK-47 assault rifle.  Daniel Smith testified that he ran into the house as Joel was placing the 911 call. He saw that his mother had been shot many times and did not appear to be alive.  He did not see a gun beside her.  Jenny Smith, the deceased's teenaged daughter, testified that she ran to the house and saw her mother's body.  She did not see a gun beside her. Jenny saw the AK-47 assault rifle laying on the kitchen table.  Within minutes of the 911 calls,[2] law enforcement officials arrived at the scene.  They found a .45 caliber handgun leaning against Tonya's lifeless body.  Petitioner testified that he shot his wife six times with the AK-47 assault rifle because she was pointing the .45

---

[2]Both Petitioner and Terri Ann Vaclavik placed 911 calls.

caliber handgun at him and he was in fear for his life.  At the conclusion of Petitioner's trial, the jury rejected his defense of self-defense and found him guilty of First Degree Murder.  The jury recommended a sentence of life with the possibility of parole.  The trial judge sentenced Petitioner in accordance with the jury's recommendation.  At trial, Petitioner was represented by attorney Wes Johnson.

Petitioner appealed his convictions and sentences to the Oklahoma Court of Criminal Appeals (OCCA).  On direct appeal, Petitioner was represented by attorney Lee Ann Jones Peters. He raised eight (8) propositions of error, as follows:

Proposition 1:  The instructions erroneously conveyed to the jury that Mr. Shaleen was not legally entitled to act in self-defense.

Proposition 2:  Admission of testimonial hearsay statements from the deceased violated Appellant's right to confront the witnesses against him under the Sixth, Eighth, and Fourteenth Amendments of the United States Constitution and Article II, §§ 7, 9, and 20 of the Oklahoma Constitution.

Proposition 3:  Evidence of other crimes and bad acts and opinion testimony that Mr. Shaleen was violent and abusive was inadmissible and prejudicial, and it deprived Mr. Shaleen of a fair trial on the issues.

Proposition 4:  Appellant was denied his right to a fundamentally fair trial before a properly instructed jury by the trial court's failure to provide, and defense counsel's failure to request, proper instructions on critical features of the law relevant to the case and by the trial court's improper instructions to the jury upon issues not fairly raised by the evidence.

Proposition 5:  The trial court erred in excluding from evidence defense exhibit number 5, thereby depriving him of his Sixth Amendment right to present evidence in his defense.

Proposition 6:  Prosecutorial misconduct prevented Mr. Shaleen from receiving a fair trial.

Proposition 7:  Mr. Shaleen was deprived of the effective assistance of counsel in violation of the Sixth and Fourteenth Amendments to the United States Constitution and Article II, §§ 7 and 20 of the Oklahoma Constitution.
A.      Failure to utilize evidence.

3

B.    Failure to request appropriate instructions and to object to inappropriate instructions.

C.    Failure to object to the introduction and use of evidence of other crimes and bad acts.

D.    Failure to object to the prosecutorial misconduct.

Proposition 8: The accumulation of error deprived Appellant of a fair trial and reliable verdict.

(Dkt. # 6, Ex. 1).  On September 10, 2009, in Case No. F-2008-116, the OCCA entered its unpublished summary opinion affirming Petitioner's Judgment and Sentence. See Dkt. # 6, Ex. 3. Petitioner did not seek post-conviction relief.

In his petition for writ of habeas corpus (Dkt. # 2), Petitioner identifies the following grounds of error:

Ground 1:    The Oklahoma Appellate Court erred in ruling that there was no error in the self-defense instructions as given, when as a matter of Oklahoma law they foreclosed his defense of self-defense in misstating the law regarding one who initiates an altercation verbally or with non-deadly means. This deprived Mr. Shaleen of his due process right under the Fourteenth Amendment.

Ground 2:    The Oklahoma Appellate [Court] found that it was indeed error to admit statements by Mrs. Shaleen alleging physical abuse by Mr. Shaleen, because these statements did not fit the excited utterance exception to the hearsay rule and thus violated Mr. Shaleen's right to confront witnesses against him and test testimonial hearsay by adversarial cross-examination, contravening Crawford v. Washington, 541 U.S. 36 (2004). But the Oklahoma Appellate Court erred in stating that it could not conclude that the error affected the outcome.

Ground 3:    The Oklahoma Appellate Court found that it was error to admit evidence of other crimes and bad acts and opinion testimony that Mr. Shaleen was violent and abusive, but erroneously refused to conclude that it deprived Mr. Shaleen of a fair trial on the issues.  This error was not harmless and deprived Mr. Shaleen of a fair trial because though it was not probative it was highly prejudicial under the facts.

Ground 4:    The Oklahoma Appellate Court also found that it was error for the trial court to instruct the jury with the uniform instruction on impeachment evidence rather than the uniform instruction limiting the use of other bad acts

4

evidence.  The prosecution explicitly exploited this error, and the appellate court erred in finding this error harmless.  Mr. Shaleen's rights to due process and a fair trial were egregiously violated as it impacted his sole argument of self-defense.

Ground 5:     The trial court erred in excluding from evidence Defense Exhibit # 5, a live photo of Ms. Shaleen holding the AK 47 rifle which later Mr. Shaleen used against her in self-defense, thereby depriving him of his Sixth Amendment right to present relevant evidence in his defense. Specifically the trial court erred in holding that this evidence was inadmissible because it was more prejudicial than probative.

Ground 6:     Prosecutorial misconduct severely compromised Mr. Shaleen's right to a fair trial by deliberately miscasting a witness who should have been disclosed and called in its case in chief as a rebuttal witness after Mr. Shaleen testified. The prosecution told the court and the jury that this witness would state that Mr. Shaleen told him he was "going to take care of the problem," suggesting some sort of premeditation. The trial court admonition and exclusion of this evidence was insufficient to undo the damage caused by the misconduct.

Ground 7:     Counsel for Mr. Shaleen at trial was ineffective under the Sixth Amendment for failing to elicit testimony from an eyewitness which would refute malice aforethought, for failing to request appropriate jury instructions, for failure to object to the introduction of other bad acts evidence, and for failure to object to prosecutorial misconduct. Because the Court of Criminal Appeals summarily and without discussion rejected Mr. Shaleen's application for evidentiary hearing, containing non-record evidence, it did not decide the Sixth Amendment issue on its merits, and its decision is not entitled to AEDPA deference.

Ground 8:     Even if none of the errors complained of were insufficient alone to warrant reversal, the three errors found by the Oklahoma Appellate Court, and the four errors proposed it erroneously did not find, resulted in their accumulation in denial of due process and a fair trial.

(Dkt. # 2).  In response to the petition, see Dkt. # 13, Respondent argues that Petitioner is not entitled to habeas corpus relief under 28 U.S.C. § 2254(d) as to Grounds 2, 6, 7, and 8, and that Grounds 1, 3, 4, and 5 raise issues of state law and, for that reason, are not cognizable in this habeas corpus action. Id.

**ANALYSIS**

A. **Exhaustion/Evidentiary hearing**

As an initial matter, the Court must determine whether Petitioner meets the exhaustion requirements of 28 U.S.C. § 2254(b). See Rose v. Lundy, 455 U.S. 509, 510 (1982). Petitioner presented his claims to the OCCA on direct appeal. Therefore, he has exhausted state court remedies.

In addition, the Court finds that an evidentiary hearing is not warranted as Petitioner has not met his burden of proving entitlement to an evidentiary hearing. See Williams v. Taylor, 529 U.S. 420 (2000); Miller v. Champion, 161 F.3d 1249 (10th Cir. 1998).

B. **Claims adjudicated by the OCCA**

The Antiterrorism and Effective Death Penalty Act (AEDPA) provides the standard to be applied by federal courts reviewing constitutional claims brought by prisoners challenging state convictions. Under the AEDPA, when a state court has adjudicated a claim, a petitioner may obtain federal habeas relief only if the state court decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." See 28 U.S.C. § 2254(d); Williams v. Taylor, 529 U.S. 362, 386 (2000); Neill v. Gibson, 278 F.3d 1044, 1050-51 (10th Cir. 2001). When a state court applies the correct federal law to deny relief, a federal habeas court may consider only whether the state court applied the federal law in an objectively reasonable manner. See Bell v. Cone, 535 U.S. 685, 699 (2002); Hooper v. Mullin, 314 F.3d 1162, 1169 (10th Cir. 2002). "When a federal claim has been presented to a state court and the state court has denied relief, it may be presumed that the

state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary." Harrington v. Richter, 131 S. Ct. 770, 784-85 (2011).

The OCCA adjudicated all of Petitioner's claims on direct appeal. Therefore, to the extent his claims are cognizable in this federal habeas corpus proceeding, they shall be reviewed pursuant to 28 U.S.C. § 2254(d).

### 1.      Jury instructions on self-defense (Ground 1)

In Ground 1 of his petition, Petitioner alleges that the trial court issued improper self-defense instructions to the jury. See Dkt. # 2. As his first proposition of error on direct appeal, Petitioner argued the instructions erroneously conveyed to the jury that Petitioner was not legally entitled to act in self-defense. See Dkt. # 6, Ex. 1. In addition, Petitioner requested that the OCCA adopt a uniform jury instruction to fit the specific circumstances of his case. Id. at 14. In adjudicating this claim on direct appeal, the OCCA cited Eizember v. State, 164 P.3d 208, 236 (Okla. Crim. App. 2007), and found that "the instructions stated the proper law in light of the evidence adduced at trial. The facts of this case do not invite this Court to consider the law relating to aggressor self-defense." See Dkt. # 6, Ex. 3 at 2 (footnotes omitted). The OCCA offered further explanation for its ruling in footnote 2 of its summary opinion:

> Shaleen asks this Court to consider formally adopting an exception to the general rule that the aggressor forfeits his right to a claim of self-defense where the victim responds to the initial aggressor's use of non-deadly force with deadly force.
>     Because the facts developed at trial would not invoke this exception, we need not consider whether to adopt this exception at this time. The record presented three potential factual scenarios. During Shaleen's call to the 911 Operator immediately after the shooting, he states that he was arguing with his wife, Tonya Rae Smith-Shaleen, and thought she was reaching for her gun, so he shot her. Shaleen acknowledged on the 911 tape that Smith-Shaleen never did get her gun. The second scenario was presented by Shaleen from the witness stand. Shaleen stated that he was engaged in a verbal dispute with Smith-Shaleen when he turned away from her. Upon turning back to his wife, he observed her pointing a gun at him in a threatening

fashion.  Only then did Shaleen draw his gun.  The third scenario was presented by the son of Smith-Shaleen, Waylon Smith, who stated that prior to any guns appearing on the scene, Shaleen was choking Smith-Shaleen and banging her head against the wall.  Subsequently, Shaleen drew his gun and opened fire.  Smith-Shaleen never had a gun.  Not one of these three scenarios presented at trial invite an instruction providing that the right of an aggressor to claim self-defense is reestablished as a result of escalation to deadly force.

(Dkt. # 6, Ex. 3 at 2 n.2).

It is well established that "errors in jury instructions in a state criminal trial are not reviewable in federal habeas corpus proceedings, 'unless they are so fundamentally unfair as to deprive petitioner of a fair trial and to due process of law.'" Nguyen v. Reynolds, 131 F.3d 1340, 1357 (10th Cir. 1997) (quoting Long v. Smith, 663 F.2d 18, 23 (6th Cir. 1981)); see also Maes v. Thomas, 46 F.3d 979, 984 (10th Cir. 1995) ("A state trial conviction may only be set aside in a habeas proceeding on the basis of erroneous jury instructions when the errors had the effect of rendering the trial so fundamentally unfair as to cause a denial of a fair trial.").  Generally, matters concerning the giving of jury instructions are considered questions of state law and not proper subjects of federal habeas corpus review under 28 U.S.C. § 2254. Patton v. Mullin, 425 F.3d 788, 807 (10th Cir. 2005). The burden on a petitioner attacking a state court judgment based on a refusal to give a requested jury instruction is especially great because "'[a]n omission, or an incomplete instruction, is less likely to be prejudicial than a misstatement of the law.'" Maes, 46 F.3d at 984 (quoting Henderson v. Kibbe, 431 U.S. 145, 155 (1977)).

Because errors in jury instructions in a state criminal trial are not reviewable in federal habeas corpus proceedings, Petitioner is not entitled to relief on this claim unless he demonstrates that the self-defense instructions were so fundamentally unfair as to deprive him of a fair trial and to due process of law.  Petitioner has failed to make the necessary showing.  The Court has carefully

8

reviewed all of the instructions given to Petitioner's jury.  See Dkt. # 8-13, O.R. at 176-224.  In

order to evaluate Petitioner's defense of self-defense, the jury had to determine which party was the

aggressor.  In Instruction No. 16, see Dkt. # 8-13, O.R. at 192, the jury was instructed that, based

on the evidence, the deceased could be considered the aggressor and that determination was a

consideration "in ascertaining whether or not the defendant reasonably and in good faith believed

that he was in danger of losing his life or of receiving great bodily injury at the hands of the

deceased." See id.  The jury also received Oklahoma's uniform self-defense instructions as set forth

at OUJI-CR(2d) 8-46, 8-49, 8-50, 8-51, 8-52, 8-53.  See id., O.R. at 207-212.  Although defense

counsel argued at trial that OUJI-CR(2d) 8-50 and 8-51 should not be given because they are

confusing and prevented the jury from finding that Petitioner had established his right to self-

defense,[3] the Court notes that those instructions accurately restated the approved Oklahoma Uniform

Jury Instructions on self-defense.  See Jones v. State, 201 P.3d 869, 886 (Okla. Crim. App. 2009).

The Court also notes that the Committee Comments on the OUJI Instructions provide that:

> [Instructions 8–50 to 8–53] should be used only when a dispute exists as to whether
> the defendant or other participant in the altercation was at fault. When such a dispute
> exists, all four instructions should be given so the jury will be clearly informed as to
> the respective rights of the parties. Failure to give these four instructions would mean
> that the trial court had improperly assumed that the defendant was the aggressor.

Committee Comments, Instruction 8–53, OUJI–CR(2d). Here, the jury was to determine whether

Petitioner lawfully reacted to the actions of the victim, or whether he was at fault, thereby acting

unlawfully. The trial judge properly included all four instructions. The jury was properly instructed

---

[3]During the instructions conference, defense counsel objected to the self-defense instructions,
arguing that "the deceased was the aggressor and the danger to personal safety was to [Petitioner]
only and so I believe that [Instruction 8-50] will be confusing to the jury . . . ." See Dkt. # 8-10, Tr.
Vol. VII at 1310.

in accordance with the Uniform Jury Instructions, which "shall be used unless the court determines that the instruction does not accurately state the law." Hammon v. State, 999 P.2d 1082, 1099 (Okla. Crim. App. 2000) (citing Okla. Stat. tit. 12, § 577.2). Therefore, after review of the record and the jury instructions, the Court finds that the OCCA's determination that the instructions given in this case stated the proper law in light of the evidence adduced at trial is supported by the record.[4]

In his habeas petition, Petitioner emphasizes that the facts of his case warrant modification of the law relating to aggressor self-defense. However, the Court agrees with the OCCA's conclusion that the facts of this case do not justify modification of Oklahoma law. Under the facts relayed by Petitioner to the 911 operator and the facts relayed by Waylon during his testimony at trial, any force exerted by Mrs. Shaleen never escalated to deadly force. Under the facts relayed by Petitioner during his testimony at trial, he was never the aggressor and, as a result, there was no need to reestablish his right to self-defense. In addition, the physical evidence presented at trial did not support Petitioner's argument that the deceased became the aggressor in her confrontation with Petitioner. In fact, the physical evidence supported the conclusion that the handgun had been placed beside the deceased after the shooting. Upon arriving at the scene, law enforcement officials found Mrs. Shaleen's .45 caliber handgun resting against her left leg. See Dkt. # 9-1 at 7, 9. However, there was no blood on the handgun. See Dkt. # 8-8, Tr. Vol. V at 853; Dkt. # 8-9, Tr. Vol. VI at 999. Officer Cross, one of the technical investigators for the case, testified that, in light of the significant

---

[4]The recording of the 911 call placed by Petitioner is not part of the record before this Court. However, under 28 U.S.C. § 2254(e)(1), a finding of fact by a state court is presumed correct, unless the petitioner rebuts the finding with clear and convincing evidence. See 28 U.S.C. § 2254(e)(1). The OCCA made a finding of fact that "Shaleen acknowledged on the 911 tape that Smith-Shaleen never did get her gun." (Dkt. # 6, Ex. 3 at 2 n.2). Petitioner does not allege that the OCCA erred in its factual determination regarding the content of the 911 recording. Therefore, it is presumed correct.

amount of blood resulting from the six gunshot wounds sustained by Mrs. Shaleen, he would have expected to find blood on the gun if she had been holding it when she was shot. See Dkt. # 8-9, Tr. Vol. VI at 999. In addition, when police officers arrived at the scene, the dresser drawer where Mrs. Shaleen kept her handgun was open. See id. at 976. However, the blood spatter evidence demonstrated that the drawer was not open at the time of the shooting. See Dkt. # 8-8, Tr. Vol. V at 884; Dkt. # 8-9, Tr. Vol. VI at 980-81. Lastly, one of the bullets was found embedded in the floor underneath the deceased's body. See Dkt. # 8-8, Tr. Vol. V at 824; Dkt. # 8-9, Tr. Vol. VI at 983, 987. That evidence, coupled with the angle of the wound to Mrs. Shaleen's neck and the fact that the neck wound had stippling,[5] led the medical examiner to agree with the prosecutor that the evidence was consistent with someone standing over the victim and shooting down at her. See Dkt. # 8-9, Tr. Vol. VI at 1042.

In summary, the evidence does not justify Petitioner's request for modification of Oklahoma law regarding circumstances giving rise to an aggressor's reestablishment of the right to self-defense. Upon careful review of the record, the Court finds that the self-defense instructions did not deprive Petitioner of fundamental fairness or violate due process. See Henderson, 431 U.S. at 155. The OCCA's adjudication of this claim was not contrary to, or an unreasonable application of, federal law as determined by the Supreme Court. Petitioner is not entitled to habeas corpus relief on his Ground 1 claim.

**2.      Improper admission of bad acts evidence and erroneous limiting instruction (Grounds 3 and 4)**

---

[5]The medical examiner explained that stippling "is little dot-like marks on the skin's surface that are caused by the violent impact of particles of gunpowder that have not burned or partially burned . . . . Now, the particles of powder, if the muzzle is very close to the body, can actually strike the skin and make marks and this is what we call stippling." See Dkt. # 8-9, Tr. Vol. VI at 1025-26.

In Grounds 3 and 4, Petitioner alleges that the trial judge improperly allowed admission of evidence of bad acts by Petitioner and then issued an incorrect limiting instruction regarding use of the improperly admitted evidence. See Dkt. # 2. Specifically, in Ground 3, Petitioner complains that the trial judge erred in allowing Jenny Smith, the deceased's daughter, to testify regarding other incidents of violent and abusive behavior by Petitioner. Id. at 29. On direct appeal, the OCCA agreed and found that the evidence should have been excluded. The OCCA explained that,

> The bad acts complained of were brought in by the testimony of Smith-Shaleen's daughter, Jenny. Jenny's testimony accused Shaleen of violent behavior and abuse of Smith-Shaleen and Shaleen's son, Eric. Jenny also testified to two specific examples of Shaleen's abuse of Smith-Shaleen: a time when Shaleen was on top of Smith-Shaleen in a hotel and a time when Shaleen slapped Smith-Shaleen so hard on the leg that it left a bruise.
>
> The State argues that bad acts evidence was relevant to Shaleen's intent and credibility. The record will not support the State's argument.

(Dkt. # 6, Ex. 3 at 3 n. 6).

In Ground 4, Petitioner complains that the trial court failed to provide, and trial counsel failed to request, the proper jury instruction limiting the use of the improperly admitted evidence of Petitioner's bad acts. See Dkt. # 2 at 36. On direct appeal, the OCCA agreed that "the trial judge erred in failing to properly instruct the jury according to the appropriate use of the erroneously admitted evidence." See Dkt. # 6, Ex. 3 at 3. The OCCA explained that,

> Instead of properly instructing the jury according to the limited use of other acts evidence admitted under Section 2404(B), the trial court erroneously instructed the jury on impeachment by prior bad acts according to Section 2608. Section 2608 permits inquiry into past conduct of a witness only where that past conduct is probative of truth and veracity. When inquiring, Section 2608 prohibits specific instances of conduct. Shaleen's past conduct testified to at trial – specific instances of abuse and instances of drug and gun use – are not probative of truth and veracity. *See* 12 O.S.2001, § 2404; 12 O.S.2001, § 2608; Instruction No. 9-21, OUJI-CR(2d) (Supp.2000).

(Id. at 3 n.7).   Despite the errors in admitting the evidence and in the jury instruction, the OCCA denied relief, reviewing for plain error and finding that "considering the facts of this case, we cannot conclude that the outcome of the trial would have been different."   See id. at 3-4 n.8.

"[F]ederal habeas corpus relief does not lie for errors of state law." Estelle v. McGuire, 502 U.S. 62, 67 (1991); see also Hooks v. Workman, 606 F.3d 715, 748 (10th Cir. 2010).   In conducting habeas review, "a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States." Estelle, 502 U.S. at 67-68. "In a habeas proceeding claiming a denial of due process, 'we will not question the evidentiary . . . rulings of the state court unless [the petitioner] can show that, because of the court's actions, his trial, as a whole, was rendered fundamentally unfair.'" Maes, 46 F.3d at 987 (quoting Tapia v. Tansy, 926 F.2d 1554, 1557 (10th Cir. 1991)).   Similarly, as discussed above, it is well established that "errors in jury instructions in a state criminal trial are not reviewable in federal habeas corpus proceedings, 'unless they are so fundamentally unfair as to deprive petitioner of a fair trial and to due process of law.'" Nguyen, 131 F.3d at 1357 (10th Cir. 1997) (quoting Long, 663 F.2d at 23); see also Maes, 46 F.3d at 984 ("A state trial conviction may only be set aside in a habeas proceeding on the basis of erroneous jury instructions when the errors had the effect of rendering the trial so fundamentally unfair as to cause a denial of a fair trial.").   The Tenth Circuit Court of Appeals has found "no practical distinction" between the formulations of plain error used by the OCCA and the federal due process test, requiring reversal when an error "so infused the trial with unfairness as to deny due process of law." Thornburg v. Mullin, 422 F.3d 1113, 1125 (10th Cir. 2005) (quoting Estelle, 502 U.S. at 75). Because the OCCA applied the same test required for a due process determination, this Court defers to its ruling unless it "unreasonably appli[ed]" that test.   Id. (citing 28 U.S.C. § 2254(d)). A

13

proceeding is fundamentally unfair under the Due Process Clause if it is "shocking to the universal sense of justice." United States v. Russell, 411 U.S. 423, 432 (1973).

Under the facts of this case, the admission of the evidence of other bad acts, even if erroneous, did not so infuse the trial with unfairness as to deny due process of law. Other evidence, in addition to the testimony of Jenny Smith, demonstrated that the relationship between Petitioner and Mrs. Shaleen was turbulent. See, e.g., Dkt. # 8-7, Tr. Vol. IV at 638-39. In addition, Eric Shaleen, Petitioner's son, testified as a witness for the defense and denied having been abused by Petitioner. See Dkt. # 8-10, Tr. Vol. VII at 1139. Petitioner has failed to demonstrate that his trial was rendered fundamentally unfair by the trial court's admission of other bad acts evidence. Petitioner is not entitled to habeas corpus relief on Ground 3.

In addition, upon careful review of the record, including the instructions issued by the trial court, see Dkt. # 8-13, O.R. at 176-224,[6] the Court finds that the trial judge's instructions to the jury did not deprive Petitioner of fundamental fairness or violate due process. See Kibbe, 431 U.S. at 155. Significantly, both OUJI-CR(2d) 9-21, the instruction given, and OUJI-CR(2d) 9-9, the more appropriate limiting instruction, include the admonition that a jury can not consider the evidence "as proof of innocence or guilt." Petitioner's trial was not rendered fundamentally unfair as a result of the improper limiting instruction. The OCCA's adjudication of this claim was not an unreasonable

---

[6]The record reflects that the instruction received by Petitioner's jury limited the use of evidence demonstrating that he had "committed conduct that may affect his credibility." See Dkt. # 8-13, O.R. at 198 (Instruction No. 22 (citing OUJI-CR(2d) 9-21 (based on Okla. Stat. tit. 12, § 2608))). As determined by the OCCA, the more appropriate limiting instruction would have been OUJI-CR(2d) 9-9, based on Okla. Stat. tit. 12, § 2404(B). Under Okla. Stat. tit. 12, § 2404(B), "[e]vidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity or absence of mistake or accident." Okla. Stat. tit. 12, § 2404(B).

application of Supreme Court law, nor was it based on an unreasonable determination of the facts. 28 U.S.C. § 2254(d). Petitioner is not entitled to habeas corpus relief on Ground 4.

### 3.        Exclusion of photograph (Ground 5)

In Ground 5, Petitioner argues that the trial court erred in excluding from evidence defense Exhibit # 5, a photograph of the victim holding an AK-47 assault rifle in her hands.  See Dkt. # 2. On direct appeal, the OCCA ruled that "the trial court did not abuse its discretion in excluding the photograph of the victim with a gun in her hands. The trial court concluded that the probative value of the photograph was outweighed by the potential for prejudice."  See Dkt. # 6, Ex. 3 at 4.

Because this ground of error presents an issue of state evidentiary law, this Court's review is limited to ensuring only that the state court's rulings did not violate the Constitution, laws, or treaties of the United States. Estelle, 502 U.S. at 68.  It is not the responsibility of a federal habeas court to cure errors from the state court concerning state law.  Id. at 67-68.  A habeas court considers state law evidentiary questions "if the alleged error was so grossly prejudicial that it fatally infected the trial and denied the fundamental fairness that is the essence of due process." Revilla v. Gibson, 283 F.3d 1203, 1212 (10th Cir.2002) (quotations omitted).

Petitioner is not entitled to habeas corpus relief on this claim unless he can show that, because of the judge's evidentiary ruling, his trial, as a whole, was rendered fundamentally unfair. Petitioner cannot make the necessary showing.  The record is replete with evidence presented to the jury demonstrating that Tonya was interested in and comfortable with guns.  Petitioner testified that he and Tonya owned a matched set of "his and hers" .45 caliber handguns, that Tonya participated in collecting guns and owned five or six of the guns in the couples' collection, including an SKS rifle, that they went to the shooting range together about four times a year, and that she was a better

shot at a distance than he was.  See Dkt. # 8-10, Tr. Vol. VII at 1150-51, 1163-64, 1169.  In addition,

photographs entered into evidence demonstrated that there were rifles hanging on the wall of the

couple's bedroom and that there was a wall gun safe in the home.  See Dkt. ## 9 at 16 (State's Ex.

15), 9-3 at 4 (State's Ex. 61), 11-1 at 13, 15 (State's Exs. 220, 222).  In light of that evidence, the

Court finds that Petitioner's trial was not rendered fundamentally unfair by the trial judge's ruling

excluding the photograph of the victim holding an assault rifle in her hands.  Petitioner is not entitled

to habeas corpus relief on Ground 5.

### 4.   Confrontation clause violation (Ground 2)

As his second ground of error, Petitioner argues that the trial judge improperly admitted

hearsay testimony resulting in a violation of his right to confront a witness against him.  See Dkt.

# 2.  Specifically, Petitioner complains that the trial judge allowed Officer Mooney, a Broken Arrow

Police Officer, to testify as to statements made to her by Mrs. Shaleen when the officer responded

to a prior domestic dispute at the couple's home.  See id.  The record demonstrates that Officer

Mooney testified, as a witness for the defense, that on June 3, 2006, or approximately three months

prior to the incident in this case, she responded to a domestic violence call at the Shaleen home.  See

Dkt. # 8-9, Tr. Vol. VI at 1113.  On direct examination by defense counsel, Officer Mooney testified

that she first made contact with Tonya Shaleen in the living room of the house.  Id. at 1117.  After

taking Mrs. Shaleen outside of the home, the officers patted her down and had her sit on the front

porch.  Id. at 1118.  She was not handcuffed.  Id.  Petitioner was in the bedroom.  Id. at 1118-19.

Officer Mooney wrote a report concerning the incident.  Id. at 1116.  Based on the fact that

Petitioner placed the 911 call, Officer Mooney identified Mrs. Shaleen as the dominant aggressive

person.  Id. at 1122.  On cross-examination by the prosecutor, the trial judge allowed Officer

Mooney to testify as to what Mrs. Shaleen told her about the incident, including that Petitioner "had

drug her down the hallway" and that she received an injury to her elbow.  Id. at 1126.  The trial

judge allowed the testimony, overruling Petitioner's hearsay objection and finding that the

statements qualified as an excited utterance.  Id.  On redirect, Officer Mooney testified that Mrs.

Shaleen confirmed that she had brandished a .45 caliber pistol at Mr. Shaleen. Id. at 1129.  On

recross-examination, Officer Mooney testified that Mrs. Shaleen said that when she pointed the .45

caliber pistol at Mr. Shaleen, it was in self-defense.  Id. at 1130.

On direct appeal, Petitioner argued that the trial judge erred in admitting the hearsay as an

excited utterance resulting in a violation of Petitioner's Sixth Amendment right to confront

witnesses against him. See Dkt. # 6, Ex. 1 at 17.  In resolving this claim on direct appeal, the OCCA

found that,

> [T]he trial court erred when it ruled that statements made by Smith-Shaleen three
> months prior to her death concerning physical abuse by Shaleen were admissible
> under the excited utterance exception to the hearsay rule. The circumstances leading
> up to Smith-Shaleen's statements suggest that they were both contemplated and self-
> serving.  Nevertheless, considering the facts of this case, including Shaleen's
> admission that he shot Smith-Shaleen and that she was unarmed at the time, we
> cannot conclude that the error affected the outcome.

(Dkt. # 6, Ex. 3 at 2-3 (footnotes omitted)).

Thus, the OCCA found that the trial judge erred in admitting the hearsay statements, but that

the evidentiary error did not affect the outcome of the trial.  Although Petitioner argued in his direct

appeal brief that the admission of the hearsay statements violated his rights under the Confrontation

Clause, see Dkt. # 6, Ex. 1 at 17, the OCCA did not specifically analyze the constitutional claim.

Nonetheless, the OCCA's decision must be upheld unless an independent review of the record and

pertinent federal law leads to the conclusion that the OCCA's result "contravenes or unreasonably

17

applies clearly established federal law, or is based on an unreasonable determination of the facts in light of the evidence presented." Aycox v. Lytle, 196 F.3d 1174, 1178 (10th Cir. 1999). The Sixth Amendment Confrontation Clause guarantees that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him." Crawford v. Washington, 541 U.S. 36, 38 (2004). In Crawford, the Supreme Court adopted a fundamentally new interpretation of the confrontation right, holding that "[t]estimonial statements of witnesses absent from trial [can be] admitted only where the declarant is unavailable, and only where the defendant has had a prior opportunity to cross-examine." Crawford, 541 U.S. at 59. Thus, the focus of the protection afforded by the Confrontation Clause is formal, testimonial statements. In Davis v. Washington, 547 U.S. 813, 822 (2006), the Supreme Court provided guidance on the term "testimonial" in the specific context of police interrogations. In holding that statements made to a 911 operator during the course of a domestic emergency were nontestimonial while similar statements made to police at the secured scene of a domestic disturbance were testimonial, the Court reasoned:

> Statements are nontestimonial when made in the course of police interrogation under circumstances objectively indicating that the primary purpose of the interrogation is to enable police assistance to meet an ongoing emergency. [Statements] are testimonial when the circumstances objectively indicate that there is no such ongoing emergency, and that the primary purpose of the interrogation is to establish or prove past events potentially relevant to later criminal prosecutions.

Id. See also United States v. Smalls, 605 F.3d 765, 778 (10th Cir. 2010) (analyzing Crawford and its progeny with respect to the meaning of the term "testimonial").

In this case, under Davis, the statements made by Mrs. Shaleen to Officer Mooney were testimonial because the statements were made under circumstances objectively indicating no ongoing emergency, and in response to questioning by Officer Mooney for the purpose of establishing what had happened during the domestic disturbance. Because Petitioner did not have

the opportunity to cross-examine Mrs. Shaleen, the subsequent admission of the statements at Petitioner's trial violated the Confrontation Clause.

Confrontation clause violations are subject to harmless error analysis.  See Littlejohn v. Trammell, 704 F.3d 817 (10th Cir. 2013).  This Court's harmless error review is de novo.  Jones v. Gibson, 206 F.3d 946, 957 (10th Cir. 2000).  The appropriate harmless error standard to be applied on habeas review is from Brecht v. Abrahamson, 507 U.S. 619, 638 (1993).  See Fry v. Pliler, 551 U.S. 112, 121-22 (2007); Herrera v. Lemaster, 301 F.3d 1192, 1199 (10th Cir. 2002). That standard "requires reversal only if [the error] had substantial and injurious effect or influence in determining the jury's verdict." Brecht, 507 U.S. at 631 (quotation omitted).  "[E]rrors which do not contribute to the verdict should not be reversed unless their effect is fundamentally unfair." United States v. Turrietta, 696 F.3d 972, 984 (10th Cir. 2012) (citing Rose v. Clark, 478 U.S. 570, 579 (1986)). Thus, Petitioner's burden is to show that his trial was rendered fundamentally unfair by the admission of the evidence.

Here, the improperly admitted testimony was not crucial to the prosecution's case.  The jury heard other unchallenged testimony portraying Petitioner as being angry and physically abusive on September 12, 2006.  For example, Waylon testified that on September 12, 2006, just prior to the shooting, he saw Petitioner on top of his mother, choking her with his hands around her neck and slamming her head into the headboard and wall.  See Dkt. # 8-7, Tr. Vol. IV at 567-68.  Eric Shaleen, Petitioner's son, testified that prior to the shooting, Petitioner and Tonya were yelling and arguing.  Id. at 601.  He heard his dad kicking the bedroom door which had been locked by Tonya to keep Petitioner out of the bedroom.  Id. at 602.  Terri Vaclavik, the girlfriend of Petitioner's son Zack, was asleep in the bedroom adjacent to Petitioner's bedroom when she was awakened by the

couple's arguing. Id. at 619.  She also heard Petitioner kicking and pushing the locked bedroom

door.  Id. at 620.  Additionally, in light of the physical evidence refuting Petitioner's self-defense

testimony, as discussed above, the Court is confident that the improperly admitted hearsay did not

have a substantial and injurious effect or influence on the jury's guilty verdict.  On the facts

presented, the Court cannot say that "[g]rave doubt" exists as to the effect of the Confrontation

Clause error or that "the matter is so evenly balanced that . . . [the Court feels] in virtual equipoise

regarding the error's harmlessness." Patton v. Mullin, 425 F.3d 788, 800-01 (10th Cir. 2005)

(quoting O'Neal v. McAninch, 513 U.S. 432, 435 (1995)) (internal quotation marks omitted).

Having carefully reviewed the record, the Court concludes that the confrontation clause error in this

case was harmless.  Petitioner is not entitled to habeas corpus relief on Ground 2.

### 5.        Prosecutorial misconduct (Ground 6)

In Ground 6, Petitioner claims that his trial was rendered fundamentally unfair by

prosecutorial misconduct.  See Dkt. # 2 at 43.  Specifically, Petitioner complains that the prosecutor

asked Petitioner on cross-examination if he recalled telling Jacob Dismang, Jenny Smith's

boyfriend, that he was "getting ready to take care of [his] problem."  See Dkt. # 8-10, Tr. Vol. VII

at 1266. Petitioner answered "[n]o."  Id.  After the conclusion of Petitioner's testimony, outside the

presence of the jury, the prosecutor asked to call Dismang as a rebuttal witness. Id. at 1290.  The

trial court denied the request based on the State's failure to reveal the purported testimony to

Petitioner.  Id.  In his habeas petition, Petitioner claims that the prosecutor's improper questions

implied there was evidence that Petitioner had pre-meditated intent to harm his wife.  See Dkt. # 2

at 44.  On direct appeal, the OCCA cited Roy v. State, 152 P.3d 217, 227 (Okla. Crim. App. 2006),

and found that "the prosecutors did not exhibit any conduct that would render Shaleen's trial fundamentally unfair."  See Dkt. # 6, Ex. 3 at 4.

Where prosecutorial misconduct does not implicate a specific constitutional right, improper remarks require reversal of a state conviction only if the remarks "so infected the trial with unfairness as to make the resulting conviction a denial of due process." Donnelly v. DeChristoforo, 416 U.S. 637, 643 (1974).  "[I]t is not enough that the prosecutors' remarks were undesirable or even universally condemned."  Darden v. Wainwright, 477 U.S. 168, 181 (1986) (internal quotation marks omitted). The ultimate question is whether the jury was able to fairly judge the evidence in light of the prosecutor's conduct. Bland v. Sirmons, 459 F.3d 999, 1024 (10th Cir. 2006). "To view the prosecutor's [conduct] in context, we look first at the strength of the evidence against the defendant and decide whether the prosecutor's [conduct] plausibly could have tipped the scales in favor of the prosecution." Fero v. Kerby, 39 F.3d 1462, 1474 (10th Cir. 1994) (quotations omitted); see also Smallwood v. Gibson, 191 F.3d 1257, 1275-76 (10th Cir. 1999).  "The ultimate question is whether the jury was able to fairly judge the evidence in light of the prosecutors' conduct." Wilson v. Sirmons, 536 F.3d 1064, 1117 (10th Cir. 2008) (quotations omitted).

When viewed in light of the evidence presented at trial, the Court concludes that the prosecutor's questions regarding an alleged conversation with Jacob Dismang did not tip the scales in favor of the prosecution to the detriment of Petitioner's constitutional rights.  Petitioner answered negatively when asked if he recalled having a conversation with Dismang.  In addition, the prosecutor's questions referencing the alleged conversation were brief.  In light of the strength of the evidence presented at trial, the Court concludes the questions by the prosecutor did not infect

21

the trial with unfairness resulting in a violation of due process.  Petitioner is not entitled to habeas corpus relief on Ground 6.

### 6.    Ineffective assistance of counsel (Ground 7)

In Ground 7, Petitioner claims he was denied the effective assistance of trial counsel.  See Dkt. # 2 at 46.  Specifically, Petitioner complains that counsel provided ineffective assistance when he failed to elicit testimony from Waylon Smith, an eyewitness, to refute malice aforethought; failed to request appropriate jury instructions; failed to object to the introduction of other bad acts evidence; and failed to object to prosecutorial misconduct.  Id. at 46-52. The OCCA denied relief on this claim, citing Harris v. State, 164 P.3d 1103, 1114 (Okla. Crim. App. 2007), and Strickland v. Washington, 466 U.S. 668, 697 (1984), and finding that "trial counsel's errors did not rise to the level of ineffectiveness."  See Dkt. # 6, Ex. 3 at 4.  The OCCA also denied Petitioner's "Application for Evidentiary Hearing on Sixth Amendment Claims pursuant to Rule 3.11(B)(3)(b), *Rules of the Oklahoma Court of Criminal Appeals*."  Id. at n.12.

To be entitled to habeas corpus relief, Petitioner must demonstrate that the OCCA's adjudication of the claims of ineffective assistance of counsel was an unreasonable application of Strickland v. Washington, 466 U.S. 668 (1984).[7]  Under Strickland, a defendant must show that his

---

[7]The Court rejects Petitioner's argument that, because there was "no true adjudication of non-record claims on the merits by the state appellate court," see Dkt. # 2 at 46, the OCCA's adjudication of the claim of ineffective assistance of counsel is not entitled to deference under 28 U.S.C. § 2254(d).  See Harrington v. Richter, 131 S. Ct. 770, 784-85 (2011) (citing cases from Courts of Appeals, including Aycox v. Lytle, 196 F.3d 1174, 1177-78 (10th Cir. 1999) and stating that "[w]hen a federal claim has been presented to a state court and the state court has denied relief, it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary").  In Richter, the Supreme Court found no merit to the habeas petitioner's argument that "compliance with § 2254(d) should be excused when state courts issue summary rulings because applying § 2254(d) in those cases will encourage state courts to withhold explanations for their decisions." Id. at 784.  The Court reasoned that

counsel's performance was deficient and that the deficient performance was prejudicial. Strickland, 466 U.S. at 687; Osborn v. Shillinger, 997 F.2d 1324, 1328 (10th Cir. 1993). A defendant can establish the first prong by showing that counsel performed below the level expected from a reasonably competent attorney in criminal cases. Strickland, 466 U.S. at 687-88. There is a "strong presumption that counsel's conduct falls within the range of reasonable professional assistance." Id. at 688. In making this determination, a court must "judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct." Id. at 690. Moreover, review of counsel's performance must be highly deferential. "[I]t is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable." Id. at 689.

To establish the second prong, a defendant must show that this deficient performance prejudiced the defense, to the extent that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. at 694; see also Sallahdin v. Gibson, 275 F.3d 1211, 1235 (10th Cir. 2002); Boyd v. Ward, 179 F.3d 904, 914 (10th Cir. 1999). This Court's review of the OCCA's decision on ineffective assistance of counsel claims is "doubly deferential." Cullen v. Pinholster, 131 S. Ct. 1388, 1403 (2011) (noting that a habeas

---

"[o]pinion-writing practices in state courts are influenced by considerations other than avoiding scrutiny by collateral attack in federal court." Id. (citations omitted). The Supreme Court also noted that "requiring a statement of reasons could undercut state practices designed to preserve the integrity of the case-law tradition. The issuance of summary dispositions in many collateral attack cases can enable a state judiciary to concentrate its resources on the cases where opinions are most needed." Id. Thus, "[w]here a state court's decision is unaccompanied by an explanation, the habeas petitioner's burden still must be met by showing there was no reasonable basis for the state court to deny relief." Id.

court must take a "highly deferential" look at counsel's performance under <u>Strickland</u> and through the "deferential" lens of § 2254(d)).

<strong>a.      Failure to call Waylon Smith as a defense witness</strong>

Petitioner claims defense counsel provided ineffective assistance when he failed to call Waylon as a witness for the defense. <u>See</u> Dkt. # 2 at 48. According to Petitioner, Waylon saw the shots fired by Petitioner as they hit Mrs. Shaleen and could have refuted the State's theory that Petitioner fired the sixth shot from a position directly above her fallen body. <u>Id.</u>

In light of the evidence presented at trial, Petitioner's attorney did not perform deficiently in failing to call Waylon as a witness for the defense. "[T]he decision of which witnesses to call is quintessentially a matter of strategy for the trial attorney." <u>Boyle v. McKune</u>, 544 F.3d 1132, 1139 (10th Cir. 2008); <u>Boyd</u>, 179 F.3d 904, 915 (10th Cir. 1999) (describing decisions regarding impeaching witnesses and introducing evidence as matters of "trial strategy and tactics"); <u>see</u> <u>also</u> <u>Strickland</u>, 466 U.S. at 699. It was not an objectively unreasonable strategic decision by trial counsel to forego presenting Waylon as a witness for the defense. Waylon was the first witness called to testify for the State. Significantly, he testified that his mother did not have a gun during the September 12, 2006, altercation that resulted in her death. <u>See</u> Dkt. # 8-7, Tr. Vol. IV at 573. That testimony directly contradicted Petitioner's self-defense argument that he shot Mrs. Shaleen because she was pointing a handgun at him. In addition, on cross-examination, defense counsel attempted to impeach Waylon's credibility by eliciting testimony regarding inconsistencies in his statements made to police during two different interviews. <u>See</u> Dkt. # 8-7, Tr. Vol. IV at 585-87. Despite counsel's attempt to impeach Waylon's credibility as a witness for the State, Petitioner now claims that counsel provided ineffective assistance when he failed to call Waylon to provide

24

purportedly credible testimony for the defense.  Based on the considerations stated above, counsel's strategic decision not to call Waylon as a defense witness was objectively reasonable.  Petitioner has not demonstrated that the OCCA's adjudication of this claim was an unreasonable application of Strickland.

<strong>b.      Remaining claims of ineffective assistance of counsel</strong>

As his remaining claims of ineffective assistance of counsel, Petitioner argues that his trial counsel provided ineffective assistance when he failed to request appropriate instructions,  failed to object to the admission of prior bad acts and to the use of the impeachment limiting instruction, and failed to object to prosecutorial misconduct.  See Dkt. # 2.  In denying habeas relief on Ground 1, above, this Court determined that Petitioner's trial was not rendered fundamentally unfair by the instructions given to the jury and that the facts of this case do not warrant modification of Oklahoma law regarding an aggressor's reestablishment of the right of self-defense.  In addition, in denying relief on Grounds 3 and 4, above, this Court found that the trial judge's errors in admitting evidence of Petitioner's prior bad acts and in issuing the wrong limiting instruction did not deprive Petitioner of fundamental fairness or violate due process.  Lastly, in denying relief on Ground 6, above, this Court determined that the alleged prosecutorial misconduct did not result in a fundamentally unfair trial.  Because the claims underlying these instances of alleged ineffective assistance of counsel did not result in a fundamentally unfair trial, Petitioner cannot satisfy the prejudice prong of the Strickland standard.  He cannot show that the outcome of his trial would have been different but for the alleged deficient performance by trial counsel.

In summary, Petitioner has failed to demonstrate that the OCCA's adjudication of his claim of ineffective assistance of counsel was contrary to, or an unreasonable application of, <u>Strickland</u>. Petitioner is not entitled to habeas corpus relief on Ground 7.

### 7.      Cumulative error (Ground 8)

As his final claim, Petitioner asserts that the errors at his trial, even if none were sufficient alone to warrant reversal, accumulated to result in the denial of due process and a fair trial.  <u>See</u> Dkt. # 2 at 52.  The OCCA adjudicated this claim on direct appeal and found that Petitioner "was not prejudiced by any error when considered individually or considered cumulatively."  <u>See</u> Dkt. # 6, Ex. 3 at 4 (footnote omitted).

In analyzing a cumulative error claim, the proper inquiry "aggregates all the errors that individually might be harmless [and therefore insufficient to require reversal], and it analyzes whether their cumulative effect on the outcome of the trial is such that collectively they can no longer be determined to be harmless." <u>United States v. Wood</u>, 207 F.3d 1222, 1237 (10th Cir. 2000) (quotation omitted).  The Tenth Circuit Court of Appeals has repeatedly held that cumulative error analysis is applicable only where there are two or more actual errors. <u>Workman v. Mullin</u>, 342 F.3d 1100, 1116 (10th Cir. 2003). Cumulative impact of non-errors is not part of the analysis. <u>Le v. Mullin</u>, 311 F.3d 1002, 1023 (10th Cir. 2002) (citing <u>United States v. Rivera</u>, 900 F.2d 1462, 1471 (10th Cir. 1990) (en banc)).  "In the federal habeas context, the only otherwise harmless errors that can be aggregated are federal constitutional errors, and such errors will suffice to permit relief under cumulative error doctrine only when the constitutional errors committed in the state court trial so fatally infected the trial that they violated the trial's fundamental fairness." <u>Matthews v. Workman</u>, 577 F.3d 1175, 1195 n.10 (10th Cir. 2009) (internal quotation omitted).  "[T]he task 'merely'

26

consists of 'aggregat[ing] all the errors that have been found to be harmless' and 'analyz[ing] whether their cumulative effect on the outcome of the trial is such that collectively they can no longer be determined to be harmless.'" Grant v. Trammell, 727 F.3d 1006, 1025 (10th Cir. 2013) (quoting Rivera, 900 F.2d at 1470). "Only if the errors 'so fatally infected the trial that they violated the trial's fundamental fairness' is reversal appropriate." Id. (quoting Matthews, 577 F.3d at 1195 n.10). "[A]ll a defendant needs to show is a strong likelihood that the several errors in his case, when considered additively, prejudiced him." Id. at 1026.

Here, this Court did not find two or more constitutional errors.  As a result, there is no basis for a cumulative error analysis. Therefore, Petitioner has failed to demonstrate that the OCCA's rejection of this claim was contrary to, or an unreasonable application of, federal law as determined by the Supreme Court. 28 U.S.C. § 2254(d).  He is not entitled to habeas corpus relief on Ground 8.

## C.     Certificate of appealability

Rule 11, Rules Governing Section 2254 Cases in the United States District Courts, instructs that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Pursuant to 28 U.S.C. § 2253, the court may issue a certificate of appealability "only if the applicant has made a substantial showing of the denial of a constitutional right," and the court "indicates which specific issue or issues satisfy [that] showing."  A petitioner can satisfy that standard by demonstrating that the issues raised are debatable among jurists, that a court could resolve the issues differently, or that the questions deserve further proceedings.  Slack v. McDaniel, 529 U.S. 473, 483-84 (2000) (citing Barefoot v. Estelle, 463 U.S. 880, 893 (1983)).

After considering the record in this case, the Court concludes that a certificate of appealability should not issue. Nothing suggests that the Tenth Circuit would find that this Court's application of AEDPA standards to the decision by the OCCA was debatable amongst jurists of reason.  See Dockins v. Hines, 374 F.3d 935 (10th Cir. 2004).  The record is devoid of any authority suggesting that the Tenth Circuit Court of Appeals would resolve the issues in this case differently. A certificate of appealability shall be denied.

### *CONCLUSION*

After carefully reviewing the record in this case, the Court concludes that the Petitioner has not established that he is in custody in violation of the Constitution or laws of the United States.

**ACCORDINGLY, IT IS HEREBY ORDERED that:**

1. The Court Clerk shall **substitute** Tracy McCollum, Warden, in place of Justin Jones, Director, as the proper Respondent in this matter.

2. The petition for a writ of habeas corpus (Dkt. # 2) is **denied**.

3. Petitioner's "motion to render decision expeditiously" (Dkt. # 15) is **moot**.

4. A separate judgment shall be entered in this matter.

5. A certificate of appealability is **denied**.

6. The Clerk of Court shall send a copy of this Opinion and Order to the Tenth Circuit Court of Appeals as it relates to Tenth Circuit Case No. 13-5123.

DATED THIS 30th day of October, 2013.

GREGORY K. FRIZZELL, CHIEF JUDGE
UNITED STATES DISTRICT COURT

28